WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Troy Lynn McDorman, | CIV 14-0858-PHX-DGC (MHB) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Charles Ryan, et al., | |
| Respondents. | |

TO THE HONORABLE DAVID G. CAMPBELL, UNITED STATES DISTRICT COURT:

Petitioner Troy Lynn McDorman, who is confined in the Arizona State Prison Complex, filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). Respondents filed an Answer (Doc. 12), and Petitioner filed a Reply (Doc. 22).

## BACKGROUND[1]

On February 29, 2004, Debra McDorman, Petitioner's ex-wife, brought their two adopted 19-year-old sons, Keith and Adrian, to meet with a Mesa police officer so they could report sexual abuse by Petitioner that occurred while they were juveniles. (Exh. A at 4.) Keith reported Petitioner performed various sexual acts with him from the age of 10 through 14. (Id.) Next, Adrian reported Petitioner molested him several times from the time he was 10 until he was 11. (Id.) In the course of the follow-up investigation, on February 11, 2005,

---

[1] Unless otherwise noted, the following facts are derived from the exhibits submitted with Doc. 12 – Respondents' Answer.

1  at the direction of a Mesa police detective, Adrian completed an audio-recorded
2  confrontational telephone call to Petitioner. (Exh. B at 5.) In the phone call, Petitioner denied
3  sexual contact with Keith, but made admissions of sexual contact with Adrian. (Id. at 5-6.)

4        On May 3, 2005, police arrested Petitioner. (Id. at 6.) Subsequently, in a four-count
5  indictment, the State charged Petitioner with: Count 1, intentionally or knowingly molesting
6  Adrian by touching his penis over his gym short; Count 2, intentionally or knowingly having
7  oral sexual contact with Adrian's penis; Count 3, intentionally or knowingly stroking
8  Adrian's penis; and Count 4, intentionally or knowingly molesting Keith by touching Keith's
9  penis while giving him a massage. (Exh. C.)

10        At Petitioner's jury trial, he was represented by appointed counsel, Kirk Nurmi, as
11  well as Knapp counsel, Robert Billar. (Doc. 1 at 42; Ex. D.) During the 4-day trial
12  (November 8, 2005 to November 14, 2005), Keith, Adrian and Petitioner all testified and
13  were cross-examined, Petitioner's statements to the arresting officer were found voluntary
14  and the recorded confrontation call, Trial Exhibit 4, was admitted. (Exh. D, Minute Entries
15  at 0049, 0052, 0063.)

16        The entire confrontation call was played for the jurors. Excerpts from that recorded
17  call included Adrian asking Petitioner, "Did you ever try to touch Keith ever?" (Exh. E at
18  03:40.) Petitioner replied, "No," (Id. at 03:43) and asked, "Why?" (Id. at 03:56.) Adrian told
19  Petitioner, "I think he knows that you touched me . . . I think he knows for sure." (Id. at
20  04:16-22.) Adrian then told Petitioner that Keith had told him that Petitioner tried to give him
21  (Keith) a "blowjob" once before. (Id. at 05:27-30.) When Petitioner denied this accusation,
22  Adrian asked, "so it's only been to me?" (Id. at 06:00.) Petitioner replied, "Hm-hmm
23  [affirmative response]." (Id. at 06:01) Adrian then asked, "Did you ever jerk him off ever?"
24  (Id. at 06:14.) When Petitioner again said no, Adrian asked, "Just me?" (Id. at 06:21.) To this,
25  Petitioner replied, "Yep." (Id. at 06:22.)

26        Adrian then asked Petitioner, "Is there ever really a big reason me and you did it?" (Id.
27  at 07:34.) Petitioner responded, "I don't know Adrian . . . I don't know. Shit happens." (Id.

28  - 2 -

1 at 07:38-41.) Petitioner continued: "It's been bugging me for years. . . . Once it first
2 happened it's like, now what, we're stuck." (Id. at 10:41-54.) Petitioner later stated "It's been
3 a living hell for me. I know I'm sure it has been for you too. . . . I was worried about it." (Id.
4 at 11:16-28.) When Adrian stated that he was only 12 years old when "it first started,"
5 Petitioner acknowledged that it was "somewhere around there." (Id. at 11:45-54.) The jurors
6 found Petitioner guilty of Counts 1-3, but found him not guilty of Count 4, the count that
7 involved Keith. (Exh. D. at 0063.)

8 On January 20, 2006, after hearing from 12 individuals who addressed the court on
9 behalf of Petitioner, the trial court sentenced Petitioner to the presumptive term of
10 incarceration for each of the three counts, and ordered that the three counts be served
11 consecutively, resulting in a 57-year sentence, less credit for presentence incarceration. (Exh.
12 F.) On November 8, 2007, in a Memorandum Decision, the Arizona Court of Appeals
13 affirmed his convictions and sentences.[2] (Doc. 1 at 41-56.) The Arizona Supreme Court
14 summarily denied Petitioner's petition for review on September 23, 2008. (Exh. G.)

15 On October 22, 2008, counsel for Petitioner, Cynthia A. Leyh, timely filed on
16 Petitioner's behalf a PCR notice, then eventually filed two PCR petitions supported by
17 exhibits, and filed a supplemental PCR petition. (Exh. H.) Petitioner raised three claims for
18 relief: (1) his appointed trial counsel provided constitutionally ineffective assistance of
19 counsel, (2) his Knapp counsel also provided constitutionally ineffective assistance, and (3)
20 prosecutorial misconduct, based on the prosecutor allegedly having a favorable treatment
21 agreement with Adrian. (Id.) Following the State's Response and Petitioner's Reply, the trial
22 judge who presided at the trial, the Honorable David K. Udall, denied Petitioner's PCR
23 petition without an evidentiary hearing. (Doc. 1 at 57.)

---

26 [2] On direct appeal, Petitioner contended that the trial court erred by depriving him of his counsel of choice, excluding certain evidence, amending the indictment, and sentencing
27 him to consecutive prison terms on the two counts of sexual conduct with a minor.

- 3 -

Thereafter, on February 19, 2010, Petitioner's counsel timely filed a petition for review in the Arizona Court of Appeals raising the following issues:

> 1. Did the trial court abuse its discretion when it failed to assume that all of Petitioner's allegations in his Petition were true?
>
> 2. Did the trial court abuse its discretion when it held that Petitioner failed to establish a claim for ineffective assistance of trial counsel and *Knapp* counsel?
>
> 3. Did the trial court abuse its discretion when it held that Petitioner failed to establish a claim for newly discovered evidence?
>
> 4. Did the trial court abuse its discretion when it held that Petitioner failed to establish a claim of prosecutorial misconduct?
>
> 5. Did the trial court abuse its discretion by failing to follow Rule 32.6(c)

(Exh. I at 1-2.) On November 14, 2012, the Court summarily denied review. (Doc. 1 at 58.)

Now represented by Attorney Gary Dean Schneider, Petitioner timely sought review in the Arizona Supreme Court, based on the following claims:

> A. Evidence Exists to Support Petitioner's Allegation that the State's Primary Witness May Have Had an Undisclosed Agreement with the State regarding Favorable Treatment as to Criminal Charges.
>
> B. The State's Failure to Disclose That a Key Witness is Receiving Favorable Treatment from the State in Other Criminal Proceedings Would Amount to Prosecutorial Misconduct.
>
> C. The Trial Court Abused its Discretion by Summarily Denying Petitioner's Petition for Post-Conviction Relief, Thereby Precluding an Evidentiary Hearing on the Issue of Prosecutorial Misconduct.
>
> D. An Evidentiary Hearing was Required as to Whether Petitioner's Trial Counsel Was Ineffective As to the Failure to Present Available Character Evidence for Petitioner and the Failure to Present Potential Bias Evidence Against the State's Key Witness.

(Exh. J.) In an order dated April 24, 2013, the Arizona Supreme Court summarily denied review. (Doc. 1 at 59.)

In his habeas petition, Petitioner raises four grounds for relief and in each ground he alleges that his Fourteenth Amendment due process rights were violated. In Ground One, Petitioner alleges that his rights were violated by prosecutorial misconduct in (1) the "failure to inform the trial defense of the arrest, delayed prosecution, and favorable treatment of

- 4 -

1  [Adrian]" and (2) the "failure to provide advance notice of a detective's interview of
2  petitioner at the county jail." In Grounds Two and Four, Petitioner alleges that his right to
3  an evidentiary hearing was violated. In Ground Three, Petitioner alleges that his right to
4  effective assistance of counsel was violated by (1) trial counsel failing to call 3 witnesses to
5  testify regarding Adrian's bias and motives to falsely accuse Petitioner; (2) trial counsel
6  failing to call 3 character witnesses; (3) trial counsel failing to investigate and obtain
7  documents from Adrian's adoption file; (4) trial counsel failing to prepare Petitioner for his
8  testimony at the Pope hearing; (5) trial counsel failing to request a Rule 404(b) hearing
9  regarding Adrian's prior conduct; (6) trial counsel failing to ask Petitioner about details
10 concerning Adrian's bias, motives, and prior conduct; (7) trial counsel failing to inquire as
11 to whether Adrian was receiving favorable treatment in return for his testimony; (8) Knapp
12 counsel failing to effectively cross-examine Adrian; and (9) Knapp counsel failing to
13 mention inconsistencies in Adrian's statements in closing argument.

**DISCUSSION**

15    In their Answer, Respondents contend that part of Ground One and all of Grounds
16 Two and Four are procedurally defaulted. Respondents assert that the remainder of
17 Petitioner's claims fail on the merits. As such, Respondents request that the Court deny and
18 dismiss Petitioner's habeas petition with prejudice.

19 **A.    Exhaustion and Procedural Default**

20    A state prisoner must exhaust his remedies in state court before petitioning for a writ
21 of habeas corpus in federal court. See 28 U.S.C. § 2254(b)(1) and (c); Duncan v. Henry, 513
22 U.S. 364, 365-66 (1995); McQueary v. Blodgett, 924 F.2d 829, 833 (9th Cir. 1991). To
23 properly exhaust state remedies, a petitioner must fairly present his claims to the state's
24 highest court in a procedurally appropriate manner. See O'Sullivan v. Boerckel, 526 U.S.
25 838, 839-46 (1999). In Arizona, a petitioner must fairly present his claims to the Arizona
26 Court of Appeals by properly pursuing them through the state's direct appeal process or

- 5 -

1  through appropriate post-conviction relief. See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th
2  Cir. 1999); Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1994).

3  Proper exhaustion requires a petitioner to have "fairly presented" to the state courts
4  the exact federal claim he raises on habeas by describing the operative facts and federal legal
5  theory upon which the claim is based. See, e.g., Picard v. Connor, 404 U.S. 270, 275-78
6  (1971) ("[W]e have required a state prisoner to present the state courts with the same claim
7  he urges upon the federal courts."). A claim is only "fairly presented" to the state courts
8  when a petitioner has "alert[ed] the state courts to the fact that [he] was asserting a claim
9  under the United States Constitution." Shumway v. Payne, 223 F.3d 982, 987 (9th Cir. 2000)
10 (quotations omitted); see Johnson v. Zenon, 88 F.3d 828, 830 (9th Cir. 1996) ("If a petitioner
11 fails to alert the state court to the fact that he is raising a federal constitutional claim, his
12 federal claim is unexhausted regardless of its similarity to the issues raised in state court.").

13 A "general appeal to a constitutional guarantee," such as due process, is insufficient
14 to achieve fair presentation. Shumway, 223 F.3d at 987 (quoting Gray v. Netherland, 518
15 U.S. 152, 163 (1996)); see Castillo v. McFadden, 399 F.3d 993, 1003 (9th Cir. 2005)
16 ("Exhaustion demands more than drive-by citation, detached from any articulation of an
17 underlying federal legal theory."). Similarly, a federal claim is not exhausted merely because
18 its factual basis was presented to the state courts on state law grounds – a "mere similarity
19 between a claim of state and federal error is insufficient to establish exhaustion." Shumway,
20 223 F.3d at 988 (quotations omitted); see Picard, 404 U.S. at 275-77.

21 Even when a claim's federal basis is "self-evident," or the claim would have been
22 decided on the same considerations under state or federal law, a petitioner must still present
23 the federal claim to the state courts explicitly, "either by citing federal law or the decisions
24 of federal courts." Lyons v. Crawford, 232 F.3d 666, 668 (9th Cir. 2000) (quotations omitted),
25 amended by 247 F.3d 904 (9th Cir. 2001); see Baldwin v. Reese, 541 U.S. 27, 32 (2004)
26 (claim not fairly presented when state court "must read beyond a petition or a brief ... that
27 does not alert it to the presence of a federal claim" to discover implicit federal claim).

28

Additionally, under the independent state grounds principle, a federal habeas court generally may not review a claim if the state court's denial of relief rests upon an independent and adequate state ground. See Coleman v. Thompson, 501 U.S. 722, 731-32 (1991). The United States Supreme Court has explained:

> In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism. Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

Id. at 730-31. A petitioner who fails to follow a state's procedural requirements for presenting a valid claim deprives the state court of an opportunity to address the claim in much the same manner as a petitioner who fails to exhaust his state remedies. Thus, in order to prevent a petitioner from subverting the exhaustion requirement by failing to follow state procedures, a claim not presented to the state courts in a procedurally correct manner is deemed procedurally defaulted, and is generally barred from habeas relief. See id. at 731-32.

Claims may be procedurally barred from federal habeas review based upon a variety of factual circumstances. If a state court expressly applied a procedural bar when a petitioner attempted to raise the claim in state court, and that state procedural bar is both "independent"[3] and "adequate"[4] – review of the merits of the claim by a federal habeas court is barred. See Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991) ("When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court.") (citing Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977) and Murray v. Carrier, 477 U.S. 478, 485-492 (1986)).

---

[3] A state procedural default rule is "independent" if it does not depend upon a federal constitutional ruling on the merits. See Stewart v. Smith, 536 U.S. 856, 860 (2002).

[4] A state procedural default rule is "adequate" if it is "strictly or regularly followed." Johnson v. Mississippi, 486 U.S. 578, 587 (1988) (quoting Hathorn v. Lovorn, 457 U.S. 255, 262-53 (1982)).

- 7 -

1 Moreover, if a state court applies a procedural bar, but goes on to alternatively address the merits of the federal claim, the claim is still barred from federal review. See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. ... In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.") (citations omitted); Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir. 2003) ("A state court's application of a procedural rule is not undermined where, as here, the state court simultaneously rejects the merits of the claim.") (citing Harris, 489 U.S. at 264 n.10).

A procedural bar may also be applied to unexhausted claims where state procedural rules make a return to state court futile. See Coleman, 501 U.S. at 735 n.1 (claims are barred from habeas review when not first raised before state courts and those courts "would now find the claims procedurally barred"); Franklin v. Johnson, 290 F.3d 1223, 1230-31 (9th Cir. 2002) ("[T]he procedural default rule barring consideration of a federal claim 'applies only when a state court has been presented with the federal claim,' but declined to reach the issue for procedural reasons, or 'if it is clear that the state court would hold the claim procedurally barred.'") (quoting Harris, 489 U.S. at 263 n.9).

In Arizona, claims not previously presented to the state courts via either direct appeal or collateral review are generally barred from federal review because an attempt to return to state court to present them is futile unless the claims fit in a narrow category of claims for which a successive petition is permitted. See Ariz.R.Crim.P. 32.1(d)-(h), 32.2(a) (precluding claims not raised on appeal or in prior petitions for post-conviction relief), 32.4(a) (time bar), 32.9(c) (petition for review must be filed within thirty days of trial court's decision). Arizona courts have consistently applied Arizona's procedural rules to bar further review of claims that were not raised on direct appeal or in prior Rule 32 post-conviction proceedings. See,

- 8 -

e.g., Stewart, 536 U.S. at 860 (determinations made under Arizona's procedural default rule are "independent" of federal law); Smith v. Stewart, 241 F.3d 1191, 1195 n.2 (9th Cir. 2001) ("We have held that Arizona's procedural default rule is regularly followed ["adequate"] in several cases.") (citations omitted), reversed on other grounds, Stewart v. Smith, 536 U.S. 856 (2002); see also Ortiz v. Stewart, 149 F.3d 923, 931-32 (rejecting argument that Arizona courts have not "strictly or regularly followed" Rule 32 of the Arizona Rules of Criminal Procedure); State v. Mata, 185 Ariz. 319, 334-36, 916 P.2d 1035, 1050-52 (Ariz. 1996) (waiver and preclusion rules strictly applied in post-conviction proceedings).

The federal court will not consider the merits of a procedurally defaulted claim unless a petitioner can demonstrate that a miscarriage of justice would result, or establish cause for his noncompliance and actual prejudice. See Schlup v. Delo, 513 U.S. 298, 321 (1995); Coleman, 501 U.S. at 750-51; Murray, 477 U.S. at 495-96. Pursuant to the "cause and prejudice" test, a petitioner must point to some external cause that prevented him from following the procedural rules of the state court and fairly presenting his claim. "A showing of cause must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [the prisoner's] efforts to comply with the State's procedural rule. Thus, cause is an external impediment such as government interference or reasonable unavailability of a claim's factual basis." Robinson v. Ignacio, 360 F.3d 1044, 1052 (9th Cir. 2004) (citations and internal quotations omitted). Ignorance of the State's procedural rules or other forms of general inadvertence or lack of legal training and a petitioner's mental condition do not constitute legally cognizable "cause" for a petitioner's failure to fairly present his claim. Regarding the "miscarriage of justice," the Supreme Court has made clear that a fundamental miscarriage of justice exists when a Constitutional violation has resulted in the conviction of one who is actually innocent. See Murray, 477 U.S. at 495-96.

In part of Ground One, Petitioner summarily alleges (without any factual support) that his rights were violated by prosecutorial misconduct in the "failure to provide advance notice of a detective's interview of petitioner at the county jail." In Grounds Two and Four,

Petitioner alleges that his right to an evidentiary hearing was violated. The record demonstrates that Petitioner raised these claims for the first time on appellate review, and never raised any of these claims to the state court in his PCR petitions. (Exh. H.) Consequently, these claims were not fully and fairly presented to state courts. See 28 U.S.C. § 2254(b). Failure to fairly present part of Ground One and all of Grounds Two and Four has resulted in procedural default because Petitioner is now barred from returning to state courts. See Ariz.R.Crim.P. 31.3, 32.2(a), 32.4(a). Although a procedural default may be overcome upon a showing of cause and prejudice or a fundamental miscarriage of justice, see Coleman, 501 U.S. at 750-51, Petitioner has not established that any exception to procedural default applies.

**B.    Merits**

Pursuant to the AEDPA[5], a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the state court decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring and delivering the opinion of the Court as to the AEDPA standard of review). "When applying these standards, the federal court should review the 'last reasoned decision' by a state court ... ." Robinson, 360 F.3d at 1055.

A state court's decision is "contrary to" clearly established precedent if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." Williams, 529 U.S. at 404-05. "A state court's decision can involve an

---

[5] Antiterrorism and Effective Death Penalty Act of 1996.

- 10 -

1 'unreasonable application' of Federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002).

In the properly exhausted portion of Ground One, Petitioner alleges that his rights were violated by prosecutorial misconduct in the "failure to inform the trial defense of the arrest, delayed prosecution, and favorable treatment of [Adrian]." The record before the Court, however, does not support such an assertion. The record shows the following concerning Adrian's theft of a cell phone and the subsequent prosecution:

While pre-trial proceedings were pending, on September 28, 2005, an employee of the Native New Yorker in Queen Creek reported to a Sheriff's deputy that her cell phone had been stolen. (Exh. K, Exh. 21 at 3.) The employee's cell phone provider told her that her phone had been used to call porn sites and one of the numbers called belonged to Petitioner's wife, Michelle. (Id.) When Adrian was interviewed on October 7, 2005, Adrian initially denied the theft, but after the deputy spoke to Michelle, he admitted taking the phone valued at $350 and, as requested by the deputy, turned the phone over to the deputy. (Id. at 5-6.) The supplemental report of Adrian's interview was dated October 12. (Id.)

About a month later, on November 8, 2005, as Petitioner's trial was commencing, the State filed a motion in limine to preclude, among other issues, the victim of the cell phone theft from testifying. (Exh. K, Exh. 22 at 0047.) The relevant portion of the motion stated:

> On October 14, 2005 the defense noticed [cellphone victim] as a potential witness. Information provided by defense counsel was that this witness claimed to have a cellular phone stole by Adrian McDorman. An interview was set for Friday October 28, 2005 at which time [the victim] did not appear. Defense counsel subsequently informed undersigned counsel that he would not be calling [the victim] as a witness. Therefore undersigned counsel was never able to interview her regarding the allegations.

(Id. at 2.) On November 8, 2005, before Keith or Adrian testified, the defense informed the trial court that it would not be "getting into Adrian's theft" or calling the victim to testify. (Exh. K, Exh. 20 at Tr. 11/8/05.)

- 11 -

On February 24, 2006, about a month after Petitioner was sentenced, the State charged Adrian with a class 6 felony theft for stealing the cell phone. On April 5, 2006, Adrian waived a preliminary hearing and pled guilty to a class 6 undesignated theft charge. (Exh. K, Exh. 21.) The victim did not respond to the presentence officer and therefore the officer recommended the court retain jurisdiction for purposes of determining restitution. (Id.) On April 28, 2006, the trial court suspended imposition of sentence and placed Adrian on probation for a year, with various conditions. (Id.)

Based on the record, and contrary to Petitioner's assertions, it is apparent that there was no failure to inform the defense of the arrest. Nor does the record demonstrate any improper delay in the prosecution of Adrian.

Moreover, Petitioner has produced no evidence that this was an unusually favorable plea agreement in light of the circumstances of the offense, let alone that there was some consideration for it. Additionally, given that Adrian was a complaining witness, there was no incentive for the State to offer him anything for his testimony.

Petitioner notes in his habeas petition that the prosecutor in his case "appeared on behalf of Adrian in the delayed prosecution and favorable plea agreement." (Doc. 1 at 7.) In the PCR proceeding, Petitioner presented his wife's affidavit that stated in relevant part:

> I attended Adrian's sentencing on April 28, 2006. I saw Ms. Baker, the same County Attorney who had prosecuted Troy, approach the Court and speak to the prosecutor and the Court for a few minutes right before Adrian was sentenced. Ms. Baker was not the assigned County Attorney for Adrian's case.

(Exh. L, Exh. 12 at 1 ¶ 6.) The affidavit fails to support even an inference that, at the time of trial, there was any favorable agreement between Adrian and the State concerning his theft prosecution. Thus, the allegation of some agreement with the State and Adrian is speculation that cannot justify habeas relief.

The Court will recommend that the properly exhausted portion of the claim set forth in Ground One of Petitioner's habeas petition be denied and dismissed.

1           In Ground Three, Petitioner appears to set forth 9 sub-claims of ineffective assistance 2   of counsel focused generally on counsels' strategy and undercutting Adrian's credibility. 3   Specifically, Petitioner alleges that his right to effective assistance of counsel was violated 4   by (1) trial counsel failing to call 3 witnesses to testify regarding Adrian's bias and motives 5   to falsely accuse Petitioner; (2) trial counsel failing to call 3 character witnesses; (3) trial 6   counsel failing to investigate and obtain documents from Adrian's adoption file; (4) trial 7   counsel failing to prepare Petitioner for his testimony at the Pope hearing; (5) trial counsel 8   failing to request a Rule 404(b) hearing regarding Adrian's prior conduct; (6) trial counsel 9   failing to ask Petitioner about details concerning Adrian's bias, motives, and prior conduct; 10  (7) trial counsel failing to inquire as to whether Adrian was receiving favorable treatment in 11  return for his testimony; (8) Knapp counsel failing to effectively cross-examine Adrian; and 12  (9) Knapp counsel failing to mention inconsistencies in Adrian's statements in closing 13  argument.

14          The two-prong test for establishing ineffective assistance of counsel was established 15  by the Supreme Court in Strickland. In order to prevail on an ineffective assistance claim, 16  a convicted defendant must show (1) that counsel's representation fell below an objective 17  standard of reasonableness, and (2) that there is a reasonable probability that, but for 18  counsel's unprofessional errors, the result of the proceeding would have been different. See 19  id. at 687-88.

20          Regarding the performance prong, a reviewing court engages a strong presumption 21  that counsel rendered adequate assistance, and exercised reasonable professional judgment 22  in making decisions. See id. at 690. "[A] fair assessment of attorney performance requires 23  that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the 24  circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's 25  perspective at the time." Bonin v. Calderon, 59 F.3d 815, 833 (9th Cir. 1995) (quoting 26  Strickland, 466 U.S. at 689). Moreover, review of counsel's performance under Strickland 27  is "extremely limited": "The test has nothing to do with what the best lawyers would have

done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial." Coleman v. Calderon, 150 F.3d 1105, 1113 (9th Cir.), judgment rev'd on other grounds, 525 U.S. 141 (1998). Thus, a court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690.

If the prisoner is able to satisfy the performance prong, he must also establish prejudice. See id. at 691-92; see also Smith, 528 U.S. at 285 (burden is on defendant to show prejudice). To establish prejudice, a prisoner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Id. A court need not determine whether counsel's performance was deficient before examining whether prejudice resulted from the alleged deficiencies. See Smith, 528 U.S. at 286 n.14. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id. (quoting Strickland, 466 U.S. at 697).

In reviewing a state court's resolution of an ineffective assistance of counsel claim, the Court considers whether the state court applied Strickland unreasonably:

> For [a petitioner] to succeed [on an ineffective assistance of counsel claim], ... he must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly.  Rather, he must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner.

Bell v. Cone, 535 U.S. 685, 698-99 (2002) (citations omitted); see also Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) ("Under § 2254(d)'s 'unreasonable application' clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied Strickland incorrectly. Rather, it

- 14 -

1 is the habeas applicant's burden to show that the state court applied <u>Strickland</u> to the facts
2 of his case in an objectively unreasonable manner.") (citations omitted).

3         Similar to his state court pleadings, in Ground Three of the instant habeas petition,
4 Petitioner alleges nine grounds of ineffective assistance of counsel replete with bald
5 assertions and conclusory suggestions that counsel failed to employ tactics that Petitioner
6 would have chosen with respect to witnesses, evidence, and strategy. "In determining
7 whether the defendant received effective assistance of counsel, '[the court] will neither
8 second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight,'
9 but rather, will defer to counsel's sound trial strategy." <u>Murtishaw</u>, 255 F.3d at 939 (quoting
10 <u>Strickland</u>, 466 U.S. at 689). "Because advocacy is an art and not a science, and because the
11 adversary system requires deference to counsel's informed decisions, strategic choices must
12 be respected in these circumstances if they are based on professional judgment." <u>Strickland</u>,
13 466 U.S. at 681.

14         Although Petitioner spends the entirety of Ground Three listing counsels' alleged
15 errors – i.e., counsels' failure to call witnesses, failure to investigate, failure to prepare,
16 failure to request hearings, failure to effectively cross-exam and present closing argument
17 – Petitioner has failed to provide any evidence or factual support to substantiate his claims.
18 Thus, Petitioner's claims constitute speculation, which is insufficient to establish deficient
19 performance and resulting prejudice under <u>Strickland</u>. <u>See</u> 466 U.S. at 687-94; <u>Greenway v.</u>
20 <u>Schriro</u>, 653 F.3d 790, 804 (9th Cir. 2011) ("cursory and vague [ ineffective assistance of
21 counsel claim] cannot support habeas relief."); <u>Jones v. Gomez</u>, 66 F.3d 199, 205 (9th Cir.
22 1995) (stating that conclusory allegations with no reference to the record or other evidence
23 do not warrant habeas relief); <u>James v. Borg</u>, 24 F.3d 20, 26 (9th Cir. 1994) (holding that
24 conclusory allegations may be summarily rejected); <u>see</u> generally <u>Wade v. Calderon</u>, 29 F.3d
25 1312, 1316-18 (9th Cir. 1994) (rejecting claim of ineffective assistance where petitioner failed
26 to provide support for allegation that counsel failed to investigate) (overruled on other
27 grounds); <u>United States v. Berry</u>, 814 F.2d 1406, 1409 (9th Cir. 1989) (stating that claims that
28

counsel failed to locate or interview witnesses must be accompanied by a showing of what the witnesses would say and how it would change the outcome); Juan H. v. Allen, 408 F.3d 1262, 1273 (9th Cir. 2005) (counsel cannot be ineffective for failing to raise a meritless objection).

Moreover, although the claims as presented fail to demonstrate deficient performance and resulting prejudice under Strickland, the Court notes that even if the Court were to assume Petitioner had shown deficient performance, he simply cannot show that he suffered resulting prejudice in merely undercutting Adrian's credibility. When assessing prejudice, the Court must keep in mind that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Strickland, 466 U.S. at 696. This case involved overwhelming evidence of Petitioner's guilt – consisting of an admission to the conduct alleged in the charged offenses during a confrontation call.

Accordingly, the Court finds that the state court's rejection of the claims set forth in Ground Three was neither contrary to, nor an unreasonable application of federal law. As such, the Court will recommend that Ground Three of Petitioner's habeas petition be denied and dismissed.

**CONCLUSION**

Having determined that part of Ground One and all of Grounds Two and Four are procedurally defaulted, and that the remainder of Petitioner's claims fail on the merits, the Court will recommend that Petitioner's Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

\\\

\\\

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right and because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

DATED this 26th day of June, 2015.

Michelle H. Burns
United States Magistrate Judge